YARRUT, Judge
(dissenting).
I must dissent from the majority opinion which, I respectfully consider, has improperly applied the res ipsa doctrine to the facts established in this case. Reference to “Defendant” herein will be to the Coca-Cola Bottling Company.
Even if this doctrine were applicable here, the only burden on Defendants was to exculpate Coca-Cola Company’s employees from any act of negligence resulting in the bottle breaking, not to prove how or who was responsible.
At the time of the injury to Plaintiff the offending bottle was not in the possession or control of Defendant’s employees. It had been on the shelf of the self-service grocery for one week or more before the *846 accident, exposed to contact by many shoppers during- that time. The collapse of the bottle was not shown to be due to any inherent vice in the bottle itself, or to improper filling or handling by Defendant. The fall and crash of the bottle on the cement floor was due to the intervening act of omission or commission by some person coming in contact with the bottle or the shelf on which it had previously been stacked.
The issue, then, is the factual determination of whether Plaintiffs sustained the burden of proving by a preponderance of evidence that the crash of the bottle was caused by negligent acts of Defendant’s employees.
The self-service grocery was equipped with a beverage rack for the bottled soft drinks of various bottlers, each assigned a section which it kept supplied. Wire basket carts were furnished by the grocery for the customers to haul their purchases for checking by, and payment to, the cashier.
Defendant made periodic deliveries to the grocery by a salesman and his helper to replace empty bottles. Having served the grocery for a long time, the salesman knew approximately how many cases were usually required on each call. Upon arriving at the store on this date, the helper loaded from his delivery truck the customer’s number of cases. The salesman meanwhile went into the grocery to determine how many cases were actually needed.
The salesman had been at the rack checking less than a minute when he suddenly heard the noise of bottles tumbling. He looked and saw a Coca-Cola bottle break as it hit the concrete floor, three or four feet from where it fell. At that point a grocery cart was being pushed by a customer, Mrs. Braud. Neither the salesman nor helper had touched any of the bottles on the beverage rack before this accident; and there is no evidence that a bottle fell from the helper’s hand truck.
In addition to the salesman and his colored helper there were present in the grocery Mrs. Giordano (owner), Mrs. Hudnall (Plaintiff), both looking at the bread rack 12 feet away; and Mrs. Braud, the customer who was pushing the cart described above.
Plaintiffs sought to prove the colored helper was in front of the beverage rack at the time of the accident; but the salesman and helper satisfy me the helper was just leaving a storeroom in the rear of the store trucking the fresh supply for Defendant’s rack. Plaintiffs’ witnesses could not recall seeing either the salesman or the helper before the accident; though they did testify that, before the accident, neither the salesman nor helper had touched the bottles on the beverage rack; nor had either knocked the offending bottle over. Clearly, Defendant’s employees did nothing in the grocery that caused the bottle to fall and crash on the floor. ■
Mrs. Hudnall admitted she could not explain how the accident occurred; and Mrs. Giordano did not see the accident. Therefore, only one of Plaintiffs’ witnesses (Mrs. Braud) was in a position to describe what occurred. She was pushing a self-service cart at the scene when the-bottle fell. She rolled the cart in front of the beverage rack. When she saw one of Defendant’s employees blocking her path in the back aisle, she pulled the cart back with the intention of turning off to a different aisle. As she moved back, she heard the noise made by the breaking of the bottle on the concrete floor. She admitted Defendant’s employee did not bump into her, nor did she bump into him. In her maneuver to change direction to avoid collision with the on-coming cart, she could unknowingly have knocked the bottle over. This testimony aptly tells her version.
“Q. Tell the Court, in your own-words, exactly what you were doing at the time immediately before the injury to Mrs. Hud-nall?
*847 “A. Well, I remember I was on my way out to the cashier, and the Coca-Cola helper was coming in, just turning to where I would . have to pass if I had continued the way I was going. To avoid bumping into him, I pushed back a little, and when I went back, I heard the explosion — heard Mrs. Hudnall holler, and looked down and saw the bottle broken at my buggy wheel.
* * * * * *
“Q. Mrs. Braud, you didn’t bump into the Coca-Cola helper, did you?
“A. No.
“Q. And he didn’t bump into you?
“A. No, he did not.
“Q. Did you determine that a bottle had broken?
■“A. After I heard the noise and looked down at my buggy wheel —well—I saw that the bottle was broken.
■“Q. Where was the bottle, on the floor?
■“A. Why, it was on the floor when I saw it.
“Q. Where was the bottle? Was it right next to your cart?
“A. Sort of in the front and the side of my buggy wheel.
"Q. I can’t hear you.
“A. To the front and side of my buggy wheel.
“Q. Do you know whether that bottle was on the floor before it broke?
“A. I sure don’t.
"Q. Were you particularly watching the floor to look for bottles before the bottle broke?
“A. No. I wasn’t looking at the floor for bottles.
* * * * * H*
“Q. The helper didn’t knock the bottle over, did he ?
“A. I didn’t see that.
jfc * * * * *
“Q. In other words, you were going to turn to your left to go down this aisle?
“A. No, no. I was going to come to go down this — when he was turning in here, realizing that I couldn’t — I had to back to go down this aisle (indicating). That was the purpose of backing up going this way (indicating) and then get to the cashier. As I recall, I had gone down this aisle (indicating). As he was here I realized I couldn’t pass, because it was too narrow, and just when I took my step, I heard the noise and looked down and heard Mrs. Hudnall, and I saw the broken bottle. As I heard the noise, naturally, I looked down, because I could tell which way the noise was coming from. Then I heard Mrs. Hudnall holler, and I looked over to see.
“Q. Just as you took your step, you heard the bottle break?
“A. Just when I went to back up there was an explosion.
“Q. Just as you were taking one step back you heard the noise ?
“A. Just about the time that I was.”
When cross-examined, Mrs. Braud then gave this contradictory testimony:
“Q. And you did pull the grocery basket back?
“A. Yes, I did, because I was too far to turn. If I had turned from the position I was in, I would *848 have hit the counter — the bread rack. So, I backed a little to turn.
“Q. As you stepped back with the grocery cart, do you know whether it swung over and hit any bottle ?
“A. I don’t know.
“Q. It could have?
“A. I couldn’t see it.
“Q. You weren’t watching down on the floor where these bottles were?
“A. No, I wasn’t.”
The District Judge concluded:
“This leaves but one conclusion, that the negro helper, backing up, kicked the bottle with the heel of his foot and it exploded either because of the force or because it was weak or overcharged.”
The District Judge concluded the bottle was on the floor when kicked by somebody (in his opinion the Negro helper). Clearly, it was not put there by the helper, but by some customer, since neither the salesman nor helper had touched the rack and the truck had not yet arrived there. The grocery owner (Mrs. Giordano) admitted customers often left bottles on the floor which she had to remove.
The majority opinion first disagrees with the conclusion of the trial court that Defendant’s agent kicked the bottle and caused it to explode; that Plaintiffs failed to prove Defendant’s negligence in this respect by a “reasonable preponderance of the evidence;” and then proceeds to invoke the res ipsa doctrine, which the District Court would not apply.
I cannot agree with the finding of the District Judge, viz.:
“It is clear that the said agent had exclusive control of the Coca-Cola rack at the time of the accident, being in the process of replenishing same and actually servicing the said rack.”
The store owner (Mrs. Giordano) admitted that, at the time of the accident, neither of the Defendant’s employees had touched the beverage rack.
Mrs. Hudnall (Plaintiff) told her mother when being taken to the hospital, “It isn’t these people’s fault,” referring to Defendant’s employees (Tr. pp. 59, 60).
The jurisprudence applicable to the facts of this case was fully considered and reviewed in the case of Monroe v. H. G. Hill Stores, 51 So.2d 645, where this Court held, under very similar circumstances, that Plaintiff had failed to bear the burden of proving either the bottler or the store owner negligent. Plaintiff there relied on the res ipsa doctrine, but the Court refused to apply the doctrine as follows:
“If the record before us convinced us that the bottle of beer which was responsible for Mrs. Hoerske’s injuries exploded spontaneously and that Mrs. Hoerske herself was in no way at fault, and that there was no intervening fault on the part of the other defendant, the necessary result might well be that the Falstaff Brewing Corporation would find itself under the necessity of showing that it was in no way at fault. But this record falls considerably short of eliminating these other possible causes of the breaking of the bottle. In the first place, the record overwhelmingly shows that the breaking of the bottle did not occur on the shelf on which it had been stored, but took place on the concrete floor at the feet of Mrs. Hoerske.
* * * * * *
“It is true that most of the witnesses used the word 'explosion’ as descriptive of the sound heard by them, but we are convinced that they did not intend to convey the very fine distinction which counsel would have us attach to the word ‘explosion’. We feel that, if a *849 bottle of beer or other liquid having an internal pressure of 35 or 40 to 60 pounds to the square inch should break as the result of a fall on a concrete ■floor, the sound of breaking of the bottle and the resulting sudden escape of the high pressure liquid would be very similar to the sound made by the spontaneous explosion of a similar bottle.
* * * * * *
“Our conclusion is that the bottle fell from the shelf to the floor and broke as a result of the fall. * * * We conclude that, since there is no affirmative proof of negligence on the part of the Falstaff Brewing Corporation and since the plaintiffs have not eliminated the possibility of some other cause, the doctrine of res ipsa loquitur is not applicable. * * * ”
Like the Monroe case, there is a logical explanation how the accident occurred. A customer (possibly Mrs. Braud) inadvertently struck a bottle with her grocery cart when she stepped aside to avoid collision with Defendant’s employee pushing the loaded cart. Further, Mrs. Giordano (owner) admitted she knew that her customers moved bottles around on the beverage rack and at times left them on the floor. She did testify that shortly before the accident she had cleaned the floor.
Joynes v. Valloft & Dreaux, La.App., 1 So.2d 108, and Fitzgerald v. Big Chain Stores, La.App., 22 So.2d 133, both held that, when a beverage bottle fell from the shelf of a bottle rack in a store injuring a customer, res ipsa loquitur was inapplicable.
In Shields v. United Gas Pipe Line Company, La.App., 110 So.2d 881, recovery was denied to Plaintiff who, while working on defendant’s truck, was injured when an explosion occurred as he lifted a wire from the battery of the truck, the court clearly stating the res ipsa doctrine, viz.:
“The doctrine of res ipsa loquitur is a rule of evidence peculiar to the law of negligence and is an exception or qualification of the general rule that negligence is not to be presumed but must be affirmatively established.
“The doctrine of ‘res ipsa loquitur’ permits an inference that the known act which produced the injury was a negligent act but there is no inference as to what act produced the injury and no foundation is laid for application of the doctrine where the physical act or the thing which caused the injury is unknown or not disclosed or identified, nor is the doctrine applicable where the injury might have been brought about by one, two or more causes neither of which is included or excluded by any affirmative showing.
“Where from the nature of facts alleged it is reasonable to assume that an explosion injuring plaintiff may have been caused by the negligence of another or through the instrumentality or agency of another, the doctrine of res ipsa loquitur is without application nor can the doctrine be invoked when the accident might have happened as a result of two or more causes with some of which defendant had no causal connection.
* * * * * *
“In order for the doctrine of res ipsa loquitur to be applicable, the case presented must be one in which the plaintiff cannot be expected to have information as to the cause of the accident and the defendant on the contrary must from the circumstances be presumed to be fully informed on the sub j ect.”
Since the doctrine of res ipsa loquitur does not apply here, and the evidence absolves the Defendant’s employees from any contact with the bottle rack, Plaintiffs have failed to sustain the burden of proof by a preponderance of evidence that Defendant’s employees caused or contributed to the falling and destruction of the bottle.
*850 The majority opinion extends the res ipsa doctrine to the point where a bottler of carbonated beverages becomes the insurer of anyone injured when one of its bottles, long since out of its possession and control, collapses because of some intervening extraneous force, merely because one of its employees happened to be near tire scene at the time. The same rule would apply to bottlers of non-carbonated liquids or other food products, which, for some unknown reason, long since out of their control, should suddenly fall from an elevated shelf and injure a shopper.
Hence, the judgment for Plaintiffs should be reversed and judgment rendered in favor of Defendants, dismissing Plaintiffs’ suit, at their cost in both Courts.
YARRUT, J.,
is of the opinion that a rehearing should be granted.